[ FILED ]

APR 29 2002

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE DOUGLAS,  )<br>  )<br>   Plaintiff,  )<br>  )<br>EARL F. HILLIARD,  )<br>  )<br>   Plaintiff-Intervenor,  )<br>  )<br>vs.  )<br>  )<br>STATE OF ALABAMA, et al.,  )<br>  )<br>   Defendants.  ) | CIVIL ACTION 01-D-992-N<br>(Three-Judge Court) |
| GONZALO FITCH MONTIEL,  )<br>  )<br>   Plaintiff,  )<br>  )<br>EARL F. HILLIARD,  )<br>  )<br>   Plaintiff-Intervenor,  )<br>  )<br>vs.  )<br>  )<br>JAMES BENNETT, in his official capacity as  )<br>Secretary of State of the State of Alabama,  )<br>  )<br>   Defendant,  )<br>  )<br>KEN GUIN, individually, et al.,  )<br>  )<br>   Defendant-Intervenors.  ) | CIVIL ACTION 01-D-1376-N<br>(Three-Judge Court) |
| LES BARNETT, et al.,  )<br>  )<br>   Plaintiffs,  )<br>  )<br>EARL F. HILLIARD, individually,  )<br>  )<br>   Plaintiff-Intervenor,  ) | |

EOD 4-29-02

137

|  |  |  |
|---|---|---|
| vs. | ) | CIVIL ACTION 01-D-1377-N |
|  | ) | (Three-Judge Court) |
| STATE OF ALABAMA, et al., | ) |  |
|  | ) |  |
| Defendants, | ) |  |
|  | ) |  |
| KEN GUIN, individually, et al., | ) |  |
|  | ) |  |
| Defendant-Intervenors. | ) |  |

## ORDER

This cause is before the court on a Motion to Dismiss as Moot filed on March 5, 2002, by James Bennett ("Bennett"), in his official capacity as Secretary of State of the State of Alabama, and the State of Alabama (Doc. #127).

The Complaints in these three consolidated cases originally were filed in June and July of 2001. These consolidated cases bring claims alleging that it is a violation of the United States Constitution and/or the Alabama Constitution for the Alabama Legislature to fail to redraw Congressional district lines based upon the population reflected in the United States Census 2000.

Because the drawing of Congressional districts is the province of the State, see Growe v. Emison, 507 U.S. 25 (1993), this court, and the three-judge court in the Southern District of Alabama from which the Montiel and Barnett cases were transferred, deferred to the State of Alabama for several months before taking any steps toward implementing a court-ordered re-districting plan. During that time, the Alabama Legislature had the opportunity to redraw Congressional districts on several occasions, including a special legislative session which was called partially for that purpose, but failed to do so. This failure was in the face of the concession in this case by the State of Alabama that the districts as drawn were unconstitutionally malapportioned under the United States Census 2000.

In light of the Alabama Legislature's repeated failure to redraw the Congressional district lines, the court was concerned that the Alabama Legislature would fail to redraw the Congressional lines before the qualifying deadline for the 2002 elections. Accordingly, the court finally set the trial of these three consolidated cases for January 2002. Before the trial commenced, this court accepted proposed redistricting plans from all of the parties who wished to submit a proposed plan.

Due to the complex nature of these redistricting cases, the court asked the parties to agree to a neutral expert to assist the court with the complex issues presented, including the use of redistricting software and technology. After the parties advised the court that they were unable to agree on a neutral expert, two professors, Harold W. Stanley and Katharine I. Butler, were selected by the court to assist its members in this highly technical and complex case of Congressional redistricting. In addition to aiding the court in the interpretation of plans submitted by the parties, the experts were asked to draft a potential plan under instructions of the court, which instructions were confirmed in writing. Such a plan was drafted by the experts and provided to all attorneys for comment, together with the written confirmation of the instructions of the court, and a statement of the steps taken to produce the plan.

The trial of this cause commenced on January 28, 2002. During the trial, redistricting plans were presented by Plaintiff Gonzalo Fitch Montiel ("Montiel"), Plaintiff Willie Douglas ("Douglas"), and Plaintiffs Les Barnett, Terry Lathan, and Percy Johnson ("the Barnett Plaintiffs"). Each plaintiff also produced expert witness testimony, and each Defendant and Defendant-intervenor engaged in extensive cross-examination of these expert witnesses. During the trial, the parties also sought technical assistance from the court to provide data in a particular format, and were provided this assistance in writing from the court's expert, Harold W. Stanley.

On January 30, 2002, before the conclusion of the trial, the Alabama Legislature passed a bill redrawing Alabama's Congressional districts, Alabama Act Number 2002-57, which was signed into law on the last day of trial, January 31, 2002. The bill was then submitted to the United States Department of Justice for pre-clearance. The United States Department of Justice could have taken up to sixty days to review the submission.

After the trial, this court could have used the substantial amount of information it had been presented at trial to implement an interim plan or enter an injunction, as urged by the Plaintiffs, pending a determination by the United States Department of Justice. In deference to the State, however, the court exercised restraint and declined to implement an interim plan or even to enter an injunction. The court informed the parties that it would wait as long as possible for a determination by the United States Department of Justice, and would only act to implement an interim court-ordered plan if the United States Department of Justice did not pre-clear the legislative plan with sufficient time before the deadline for candidates to qualify for the 2002 elections.

By letter dated March 4, 2002, the Attorney General of the United States of America informed the State of Alabama that he interposed no objection to Alabama Act Number 2002-57, reserving the right to reexamine the submission before the expiration of the sixty-day review period. The court is aware of no additional action by the United States Department of Justice.

Bennett and the State of Alabama contend that these three consolidated cases now have been rendered moot. This court agrees that there is nothing remaining for the court to do in the cases, and that they are due to be dismissed as moot.

Montiel and the Barnett Plaintiffs have opposed the Motion to Dismiss on the ground that they are entitled to attorneys' fees in this case. Douglas has also filed a response in which he

states that should the court determine that attorneys' fees should be awarded pursuant to 42 U.S.C. § 1988, Douglas will submit an appropriate request. Douglas further states that even if the court decides not to award attorneys' fees, the court should still tax the court-appointed experts' fees as costs to the State of Alabama. The Defendants have replied that there is no reason not to dismiss this case as moot since attorneys' fees cannot be awarded to the Plaintiffs in these consolidated cases.

In <u>Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598 (2001), the United States Supreme Court addressed the circumstances under which fees can be awarded to a prevailing party. The Court determined that prevailing party status requires a court-ordered change in the legal relationship of the parties, or a material alteration of the legal relationship of the parties. <u>Id.</u> at 604.

Montiel and Douglas contend that the State's concession that the districts as drawn became unconstitutional after the United States Census 2000 distinguishes this case from <u>Buckhannon</u>. This concession is a unilateral action.[1] No judicial action was taken. Judicial action is required for a party to be considered a "prevailing party" and, therefore, entitled to attorneys' fees. <u>Id.</u> Although this court could have entered an injunction as urged by the Plaintiffs, out of deference to the State and its efforts to enact a new redistricting plan for its Congressional districts, the court chose not to do so. Without determining whether such relief could be a proper basis for the awarding of fees, the court concludes that at this point in the

---

[1] The State conceded that the districts were malapportioned due to population changes, but only made a concession of liability contigent upon no action being taken by the Alabama Legislature.

litigation, there is no need for an injunction. There is nothing left for the court to do in these consolidated cases, and there is no basis in federal law for awarding fees under 42 U.S.C. § 1988.

The Barnett Plaintiffs argue that they are entitled to attorneys' fees pursuant to a common benefit theory under Alabama common law. The Barnett Plaintiffs and Douglas purport to assert claims for a violation of the Alabama Constitution in their Complaints. Any claims against state officials to enjoin them from violating state law, however, are barred by the Eleventh Amendment. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984). To the extent that the Barnett Plaintiffs contend that the Alabama common law attorneys' fees theory can be applied as relief for their federal law claims, such relief is also barred by the Eleventh Amendment, as the mere existence of the common law rule does not sufficiently waive the State's Eleventh Amendment immunity to suit in federal court. See Wallace v. Oklahoma, 721 F.2d 301, 305-06 & n.9 (10th Cir. 1983); N.C. Alliance for Transp. Reform, Inc. v. United States Dept. of Transp., 168 F. Supp. 2d 569, 575-76 (M.D.N.C. 2001). Accordingly, as attorneys' fees also would not be available under this theory, the Barnett Plaintiffs' objection to the dismissal of this case as moot is likewise unavailing.

Having determined that the attorneys' fees issue is not an impediment to dismissal of this case as moot, the court now turns to the issue of the court-appointed experts' fees.[2] The court finds that it is appropriate, pursuant to Federal Rule of Evidence 706, to assess the fees and costs of the experts retained by the court. Courts frequently have appointed experts when confronted with the responsibility of drawing district lines to comport with federal constitutional and/or

---

[2] In Ward v. Dearman, 626 F.2d 489 (5th Cir. 1980), a case binding on this court, see Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the court affirmed a Voting Rights Act case in which the three-judge court dismissed the suit as moot and taxed costs. Ward, 626 F.2d at 491.

Voting Rights Act requirements. See, e.g., Wesch v. Hunt, 785 F. Supp. 1491 (S.D. Ala. 1992), aff'd, 504 U.S. 902 (1992); Good v. Austin, 800 F. Supp. 557, 559 (E.D. Mich.1992); Martin v. Mabus, 700 F. Supp. 327, 331 (S.D. Miss. 1988). In these consolidated cases, the experts appointed were exceedingly well qualified and experienced in this field and were necessary to assist the court with the technical and complex issues raised by the parties' submitted plans. Moreover, the experts were essential in formulating, consistent with the court's instructions, a plan adopting a "least change" approach to redistricting to be provided to the parties for comment.

Although counsel for Defendant Siegelman requested an opportunity to examine the experts pursuant to Rule 706, the need for examination of the experts on the court-appointed experts' plan was obviated by the passage of the plan by the Alabama Legislature which was signed into law by the Governor during the trial of this cause. As the court indicated to the parties, had the State's plan not been pre-cleared by the United States Department of Justice in a timely manner, necessitating the drawing of a plan by the court with the assistance of the court's experts, the court would have considered making the experts available for examination by the parties at that time.

The court agrees with Douglas that the experts' costs and fees should be taxed as costs against the State of Alabama. This court has the discretion to direct that the experts' compensation "be paid by the parties in such proportion and at such time as the court directs . . . ." Fed. R. Evid. 706(b). As detailed above, the State of Alabama failed on repeated occasions to remedy its admittedly unconstitutional Congressional districts. This court reviewed extensive submissions by the parties, aided by the court-appointed experts, with the expectation that, given the short time in which the Alabama Legislature could act to timely adopt a plan, this

7

court might have to adopt a court-ordered Congressional redistricting plan for the State. This litigation could have been avoided in its entirety but for the excessive delay by the Alabama Legislature in re-drawing the Congressional districts. The court concludes, therefore, that under the facts and procedural history of this case, it is equitable that all of the court-appointed experts' costs and fees be taxed against the State of Alabama. See Young v. Augusta, Ga., 59 F.3d 1160, 1170 n.19 (11th Cir. 1995) (citing McKinney v. Anderson, 924 F.2d 1500 (9th Cir.), vacated on other grounds, 502 U.S. 903 (1991) as holding that it is proper for a district court to apportion all of the costs to one side in an appropriate case); see also Aiello v. Town of Brookhaven, 149 F. Supp. 2d 11, 14-15 (E.D.N.Y. 2001) (identifying the need for the plaintiffs' action to enforce the law and the fact that the government itself was in violation of the law as factors militating in favor of assessment of expert fees entirely against the defendant).

The court now turns to the issue of the amount of the experts' fees to be taxed to the State of Alabama as costs pursuant to Rule 706. Expert witnesses are "entitled to reasonable compensation in whatever sum the court may allow." Fed. R. Evid. 706(b). The court has carefully considered the bills of costs and fees submitted to the court by the court-appointed experts, the originals of which this court has filed with the Clerk of the Court. The court finds that the fees and costs submitted are reasonable given the nature, extent and value of the experts' services, the rates charged in light of the value of those services, and the assistance rendered to the court by the experts. See United States v. May, 67 F.3d 706, 708 (8th Cir. 1995).

Accordingly, it is hereby ORDERED as follows:

1. The Motion to Dismiss as Moot (Doc. #127) is GRANTED and this case is DISMISSED as moot.

2. All other currently pending motions are DENIED as moot.

3. The State of Alabama and Secretary of State James Bennett in his official capacity are TAXED the experts' fees and costs in the amount of $ 29,241.20, which includes $ 23,578.70 to be paid to the order of Harold W. Stanley and $ 5,662.50 to be paid to the order of Katharine I. Butler. The State of Alabama and Secretary of State James Bennett shall promptly make their payments directly to the experts.[3] All other costs are TAXED as paid.

Done this 29th day of April, 2002.

_____
STANLEY F. BIRCH, JR.
UNITED STATES CIRCUIT JUDGE


_____
W. HAROLD ALBRITTON, III
CHIEF UNITED STATES DISTRICT JUDGE


_____
IRA DE MENT
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] The parties may send their payments to Professor Katharine I. Butler at 801 S. Skinker, #16A, St. Louis, MO 63105, and to Professor Harold W. Stanley at Department of Political Science, University of Rochester, RC Box 270146, Rochester, New York 14627-0146.

## CIVIL APPEALS CHECKLIST

1. **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:
    *Appeals from Final Orders Pursuant to 28 U.S.C. § 1291:* Only final judgments for orders of district courts (or final orders of bankruptcy courts which have been affirmed by a district court under 28 U.S.C. §158) usually are appealable. A "final" order is one which ends the litigation on its merits and leaves nothing for the district court to do but execute the judgment. A magistrate's report and recommendation is not usually final until judgment thereon is entered by a district court judge. Compare Fed.R.App.P. 5.1, 28 U.S.C. §636(c).

    In cases involving multiple parties or multiple claims, a judgment as to fewer than all parties or all claims is not a final, appealable decision. Fed.R.Civ.P. 54(b) does permit the district court to expressly direct entry of the judgment as fewer than all of the claims or parties. See Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1369 (11th Cir. 1983), cert. denied 464 U.S. 893(1983). Certain matters, such as attorney's fees and costs, are collateral and do not affect the time for appealing from the judgment on the merits. Buchanan v. Stanships, Inc., 495 U.S. 265, 108 S.Ct. 1130, 99 L.Ed 2d 289(1988); Budinich v. Becton, 485 U.S. 196, 108 S.Ct.1717, 100 L.Ed 2d 178 (1988).

    *Appeals Pursuant to 28 U.S.C. § 1292(b) and FRAP 5:* The certificate specified in 28 U.S.C. § 1292(b) must be obtained before an application for leave to appeal is filed in the Court of Appeals. Denial or refusal by the district court to issue the certificate is not itself appealable.

    *Appeals Pursuant to 28 U.S.C. § 1292(a):* Pursuant to this statute, appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and "[i]nterlocutory decrees... determining the rights and liabilities of parties to admiralty cases..."  This statute does not permit appeals from temporary restraining orders.

    *Appeals pursuant to Judicially Created Exceptions to the Finality Rule:* These limited exceptions are discussed in many cases, including (but not limited to): Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed 2d 1528 (1949); Forgay v. Conrad, 6 How. (47 U.S.) 201 (1848); Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed 2d 199 (1964); Atlantic Federal Savings & Loan Assn. Of Ft. Lauderdale v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371 (11th Cir. 1989). Compare Coopers and Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed 2d 351 (1978); Gulfstream Aerospace Corp. V. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed 2d 296 (1988).

2. **Time for Filing:** To be effective a notice of appeal must be timely filed. Timely filing is jurisdictional. In civil cases FRAP 4(a) and 4(c) set the following time limits:

    *FRAP 4(a)(1):* The notice of appeal required by FRAP 3 "must be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry..." (Emphasis added) To be effective, the notice of appeal generally must be filed in the district court clerk's office within the time permitted. If a notice of appeal is mailed, it must be timely received and filed by the district court to be effective. FRAP 4(c) establishes special filing provisions for notices of appeal filed by an inmate confined in an institution, as discussed below.

    *FRAP 4(a)(3):* "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires." (Emphasis added)

    *FRAP 4(a)(4):* If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in FRAP 4(a)(4), the time for appeal for all parties runs from the entry of the order disposing of the last such timely filed motion outstanding.

    *FRAP 4(a)(5) and FRAP 4(a)(6):* The district court has power to extend the time to file a notice of appeal. Under FRAP 4(a)(5) the time may be extended if a motion for extension if filed within 30 days after expiration of the time otherwise permitted to file a notice of appeal. Under FRAP 4(a)(6) the time may be extended if the district court finds upon motion that a party has not received notice of entry of the judgment or order and that no party would be prejudiced by an extension.

    *FRAP 4(c):* "If an inmate confined in an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a notarized statement or by a declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid.

3. **Format of Notice of Appeal:** Form 1, FRAP Appendix of Forms, is a suitable format. See also FRAP 3(c).
    A single notice of appeal may be filed from a (single) judgment or order by two or more persons whose "interests are such as to make joinder practicable..." (FRAP 3(b)]

4. **Effect of Notice of Appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction (see Fed.R.Civ.P. 60) or to rule on a timely motion of the type specified in FRAP 4(a)(4).